oration of Washington. Good morning. Mike Kinkley for the plaintiffs. I'd like to reserve three minutes for rebuttal and I'll be watching the clock. This is a case of statutory interpretation and all statutory interpretation, of course, begins with the purpose of the statute. And the congressional purpose in the FDCPA is set forth in the first paragraph. Actually, it usually begins with the text of the statute. So tell us how your theory fits into that. And the text of the statute also supports our theory in that if you look at 1692A6, it begins with a paragraph of inclusion. And that paragraph of inclusion defines debt collector as one who's in the principal business of collecting debt or regularly collects debt. There's also a common canon of construction that where there's a general provision and a specific provision that the more specific will control over the more general. Why doesn't that principle defeat your argument? Very simply, the statute itself answers that question. The part you're referring to is 1692A6 referring to F6. And that says in so many words, this also includes. And every word in the statute should have some meaning. And if you're going to define debt collector in a way that includes a certain group and then says also includes an additional group, it is including more persons in that same definition, not excluding persons, not applying this third definition to say, oh, but we're going to throw out all these other definitions that are accepted by all of the courts. Well, doesn't it suggest that the thing that's covered by the also wasn't previously covered by anything at all? It suggests that for this very simple reason. The first two sections say the collection of a debt, and the word debt is defined in the statute. F6 doesn't refer to the word debt at all. And the reason for that is quite simple, because a repossession company that's only trying to regain possession of a return, rightful possession to the rightful owner, they don't try to collect the debt as defined by the statute in A5. The word debt is the collection of money. And nowhere in that. The enforcement of a security. The enforcement. Repossession of property. Correct. If you're. Narrowly. And it was written narrowly. That third provision of A6, expanding debt collection, is designed to be very narrow, and that's why they specifically referred only to F6, which only refers to repossession or the threat of repossession when you don't have the right to do so. It does not refer to collection of a debt. And the very simple purpose, if you read a number of cases, and if you look at the statute as a whole, the Congress didn't want to prevent somebody from regaining rightful possession of property that belongs to them. And on the other hand, if you were trying to collect a debt at the same time, then the statute applies. But what happens frequently, and the way this was. If your theory of the case is correct, it's already covered under A6. A6 covers these defendants. There are people out there who do nothing but go hook up cars and pull them away. They never contact the debtor. They never send a letter. They never ask for money. Now, there are cases also where if someone does repossession, hooks up the car, but before they do it, they say, oh, by the way, you can pay this debt, and regularly collects money. Then they're held to be debt collectors. So the question becomes, are they trying to collect the debt? And that's really where this case is decided. The statute is only designed to cover. Alito. It's hard to understand why, if we accept your premise as true, F6 would have any purpose whatsoever in the statutory statute. Its purpose was designed very clearly to cover the repossession agent, the person who has a security interest in a car. They hire a repossession agent who goes out with a tow truck, who hooks up the car and hauls it away. Now, in one sense, that's collecting a debt, because you're collecting the car to pay for the debt. You're going to sell the car. So technically you're also going to sell the real estate. Well, but the difference is, in this case, when they send out the notice of sale, they ask for money. They do a communication. They're trying to collect a debt. And that third definition of debt collector doesn't use the word debt. And the reason it doesn't use the word debt is because there's no request for money when somebody goes out and hooks up a car and tows it away. You don't ask for money. You just take it. In this case, the reason these defendants are debt collectors. Equity abhors a forfeiture. Excuse me? Equity abhors a forfeiture. And those provisions, notice and an opportunity to cure, have traditionally been a remedy applied in equity in order to prevent the debtor from losing the property. Or it was really as a courtesy or an accommodation, if you will, to the debtor to give the debtor one last chance before the holder of the secured interest forecloses on the security. In Romeo, the Second Circuit said a notice to pay or vacate is, again, based on the same due process principles of giving some kind of a notice, allowing someone to pay their debt before you take other action. Romeo held that that notice to pay or vacate is debt collection. It is a communication because it's talking about the debt. It is stating amounts you owe. It is saying pay this amount. And that is debt collection. And that's different from merely foreclosing on security interest where you never ask for the payment of money. And that's the key. If it's about payment of money, if there's a communication for the payment of money, then it is debt collection and you are a debt collector. Don't most of the statutory schemes, whether we're talking about repossessing cars or foreclosing on a deed of trust on a house, require notice and an opportunity to bring the debt current before the foreclosure can proceed? They don't require a third party to do that. In the standard car repossession case, it's the creditor sends out notices and says you owe this amount and they have to be in default. But no, the repossession agent doesn't contact you and say I'm going to come repossess your car. They just hook it up and haul it away. And that's the difference here. And that's what A6 – that's what A6 – Let's talk about realty. Forget about cars. Okay. As I understand the Washington statute, which I think is fairly typical of most state foreclosure statutes, you must give notice and an opportunity to cure before you may foreclose. Right. Or pursue nonjudicial foreclosure. Well, it is a nonjudicial foreclosure statute we're dealing with. The actual foreclosure part occurs in the notice of sale. It gives 90 days. And that also asks for the payment of money. Am I correct? You're correct in nonjudicial foreclosure states. I give notice and an opportunity. That's the notice of sale. Before you can even do that, you have to send notice of default and say pay this amount of money. But what you're arguing and the defendants are arguing with that statement – I'm not arguing. I'm interpreting. I understand. What I hope you're not arguing is that just because it's litigation, which Hines rejected, or just because there is a statutory requirement, which Romeo rejected, or just because it also serves another purpose, which Romeo rejected, of setting up a rent eviction, for instance. Just because it has these other purposes doesn't make it not debt collection. These companies are set up for one sole purpose. That's debt collection. There's a way around this. I thought it was undisputed that the primary business purpose was to foreclose on trustees. My primary argument is they regularly collect debts. They were – one listed themselves as a trustee service. One listed themselves as a collection service. But they always take the debt after default. And the statute in two places, under creditor definition and under the exception and exclusion to A6 down at the bottom of that statute, where the exclusions properly are, says if you take it after – if you don't take it after default, you're not a debt collector. And that's important because Congress already thought of this. If you have a trustee who's really a trustee who comes into this at the beginning of the process, before it's after default, they're in no danger from this statute because it doesn't apply to them. It's only these companies that are set up to collect these debts, to threaten foreclosure, and then if it's not paid, to actually do the nonjudicial foreclosure. That's the full purpose of these businesses. Actually, you've got about a minute and a half. I better save that. Yeah. Let me just pose one question to you, and that is, did you argue to the district court that the entity, which I have abbreviated as REL FCW. Professional foreclosure. Yeah. Violated 1692 F6 when it sent the notice of sale because it had no present right to possession of the property. It was Peel that did that. And, yes, we also argued that as a backup plan because they were not even appointed the successor trustee. At the point in time that that occurred. Where would I go to look to see that you preserved that argument by making it first in the district court? Well, I'm waiting for my time. Can I come back to that? Thank you. Thank you. May it please the court, David Chisler on behalf of the professional foreclosure defendants, and I suppose nominally on behalf of Homeside, but the judgment in their favor below is not being appealed. Your Honor, I want to focus on one point relating to this definition of debt collector. I think the issue as to whether or not these three definitions of debt collector in A6 are mutually exclusive has been well briefed, but I don't even think it's necessary to answer that question for this appeal because there is no evidence in the record that the professional foreclosure defendants satisfied either of the first two definitions. So even if it's theoretically possible for an entity whose principal purpose is to enforce security interests could also be involved in the regular collection of debts, there is simply no evidence in the record that the professional foreclosure defendants engage in the regular collection of debts. Unless you take opposing counsel's theory that the giving of notice itself that is precedent to the foreclosure is debt collection. Is that by definition, by statute, by requirement has to happen each time? Right. I think the interesting question then becomes does the ‑‑ if the enforcement of security interests happens to also involve in some indirect way the collection of money, whether that takes you out of means you're under the statute no longer enforcing security interests and instead being involved in regular debt collection. And I think the focus on whether or not the collection of money is involved is absolutely the wrong focus. Number one, it's not anywhere in the text of the statute. Number two, as I think the court has already pointed out, doesn't really make any sense because the enforcement of a security interest almost always as an ancillary effect involves the collection of money. But perhaps most importantly, it doesn't ‑‑ if you look at the policy of why this carveout for security enforcers was created in the statute, the policy has nothing to do with whether or not they're collecting money. It has to do with the different nature of collecting a debt that's secured versus not secured. And I think this is why the decision in the Kent case that we've cited, although it is from a district court outside this circuit, it's nevertheless an important case because it's really the only case that deals with the policy behind A6 as compared with the policy of the statute as a whole. And I think if we ‑‑ if that case is cited, it's 731F sub 652. And I think it's helpful just to review what the court said there. And I'm going to quote, the legislative history of the FDCPA thus indicates that the FDCPA was enacted in order to prevent, quote, suffering and anguish which occur, and that quote is from the legislative history, which occur when a debt collector attempts to collect money which the debt collector, through no fault of his own, does not have. In contrast to a debt collector and enforcer of a security interest, with a present right to a piece of secured property, attempts to retrieve something which another person possesses but which the holder of the security interest still owns. Unlike the debtor who lacks the money sought, the possessor of a secured property still has control of the property. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property. So in other words, companies that are directly involved in the enforcement of security interests don't have the same incentive as ordinary debt collectors to engage in the overaggressive practices of debt collection because they're not stuck trying to call up a consumer and make them pay their debt to convince them why to pay their debt as opposed to, you know, all the other debts that these consumers typically have. I think I would be a little careful with the argument because I'm sure that if we looked perhaps even at this record, we could find similarities between the contacts between representatives of the creditor and debtors that could look often similar to a creditor on an unsecured debt trying to collect the money that's owed. Because your security is only as good as the market value of the property, which may be, in many instances, less than the value of the debt. And ordinarily the lender would prefer the money than to have to go through the process of foreclosure. Fair enough. It's just I'm not saying that there aren't, you know, you couldn't find that this rule in the Carve Out that they're creating may be over-inclusive and that certainly you may find on occasion an aggressive enforcer of security interests. But given the fact that those collectors have security to enforce, it wouldn't have made sense for them to create the statutory scheme of the FDCPA simply to address those sorts of debt collectors. And I think that is why there's this Carve Out. The Second Circuit's opinion that basically acknowledged that there might be a legitimate reason that a holder of a security interest would be sending notices to a debtor, but that nonetheless there are two hats here. It's a second hat that the Fair Debt Collection practice is after. I believe that that Second Circuit case was talking about whether or not this was a debt, not whether or not the entity was a debt collector, which is. I'm referring to the language that says, you know, the notice can essentially have two purposes. One is to put the tenant, if you will, on notice that he's going to lose possession of the property, but also to done the debtor for the debt. And if that second component that the, as I understand your opposing counsel's argument, that the court said still brings these notices within the confines of the act. Well, if, I believe if you could show that there, well, the, I don't believe that that language was addressed to whether or not this person is a debt collector and subject to or limited to the provisions that are subject to an enforcer of security interest. I think the court in that case was just saying whether or not, for example, 1692 F6 would even apply, because contrary to what counsel says, in 1692 F6 there is the, they do use the language of debt. You only get to 1692 F6 if you are collecting a debt. And so you need to, so I believe the Second Circuit was addressing the issue of whether or not this was a debt, so because that would have been necessary even to get within 1692 F6. Counsel, were you sharing time? I'm sorry. He's got two minutes. I just want to, he did that request for two minutes. If I could just make one more brief point and still preserve his two minutes. I do want to just reference the fact that we have made a second argument, which could be the basis for affirming this appeal, and that is that the case is preempted by the bankruptcy code. The plaintiff's argument to that is that this case is not really about the bankruptcy code at all, but that is, although he made those arguments in his brief, if you review his complaint, paragraph 5.5, 5.7, 5.12, and 5.13, and 5.20, they all make allegations that the bankruptcy code was violated or that bankruptcy court needed to enter an order. They are what this Court said in Wells. Is the lifting of the bankruptcy stay at least as to what the foreclosure is? Yes. Yes, that is correct. Thank you, Your Honor. May it please the Court, my name is Jerry Sale, and I'm representing Peel Financial Corporation of Washington and Barron's, and I'll refer to them both as Peel. And I wanted two minutes, I thank you very much for protecting that, to address only one issue, and it was the issue that Judge Tallman raised, and that is there is the allegation that Peel violated F-6, 1692 F-6. And there are two arguments against that. Number one, it was not raised below. That's specifically addressed by the trial court. The trial court said in its ruling, plaintiff does not argue, and the facts do not support a finding, that A, B, or C is true in this situation. A, B, or C is the subsections of subsection 1692 F-6. So the court acknowledged that specifically. But it's wrong even on the merits. In this case, A, 1692 F-6A, is the only one at issue, and A refers to it's an unfair collection practice to take or threaten nonjudicial foreclosure if, quote, there is no present right to possession of the property claimed as collateral to an enforceable security interest. In this case, we know that Thompson was in default on the deed of trust. The deed of trust is in the record. It's a supplementary excerpt of record 69, and that provides for the right of possession in the money store upon default. If Peel acted without authority in sending out the notice of default, and we don't concede that point, but if that's true, then there would be a violation of state law. However, there is no violation of the FDCPA in this case because there was a right to possession by the money store, and that's the only question at issue. And that's all I needed to address in my time. Thank you very much. Mr. Kinkley, you have a few seconds, but we'll take a minute or so. First of all, the amended complaint, paragraph 8.5, says in so many words, defendant violated F-6. Okay. 8.5 of the amended complaint. The court didn't reach, and the court was wrong in, I'm sorry to say, at the district court, when they said plaintiff didn't urge. We certainly did, but the court didn't really reach that because he had found Peel wasn't a debt collector by then, and so it really didn't matter to the court. Let me just stop you one second. You alleged this in the complaint. Correct. But this got to summary judgment. Correct. This was not a judgment on the pleadings. It was not. So did that allegation survive to the next stage? We argued it. The court ruled against us, but it was sort of a throwaway because he'd already found the statute didn't apply. So when he got to the point of ruling on that, no, we did argue that, but it was never our primary thrust. But you ruled the statute didn't apply. Is that something other than ruling that Peel wasn't a debt collector? They ruled they weren't. The judge ruled they weren't a debt collector. But this section would still apply even if they were simply seeking to appeal. Correct. And the judge ruled that he didn't find that we had urged they violated it, but we clearly had. In the summary judgment context. That was my recollection. I was just looking for my briefing on that on my computer, and I didn't find that section, but that's my recollection. So if we go back and look at your brief, we won't see any reference to it either? Well, I haven't. That's what I was asking you, and if it's not there, then I think Mr. Sale may have a good point. We did raise it on appeal that that was an issue. I'll have to look back. I honestly can't say for sure that that was in the briefing. It was my recollection that it was. Again, the primary thrust that we were making at the time were the more substantive violations of the taking of too much money. These defendants took $800 each, more than $800 each, from our client, which was under a statute, 11 U.S.C. 506B, which requires those fees to be reasonable. This Court has gone a long way, Stanton v. Boeing recently, in 99 pages, about what is a reasonable attorney fee and how lawyers should be regulated. These people add $800 and collect it. $800, counsel. I mean, it's hard to imagine what you can get done for $800, given the current hourly rates of lawyers. And the record reflects what was done. A paralegal spent a couple of hours doing a notice of relief of stay. Mr. Thompson's lawyer said, sure, fine. They entered an agreed order. It was a matter of law that an $800 attorney fee in a collection action for what was it? It was the relief of stay. Well, it was unreasonable as a matter of law? Is that what you're asking us to do? What I wanted the lower court to do is to find that the court must first rule on the reasonableness of the fees in a bankruptcy proceeding. Judge Shea rejected that. He held open the determination of whether or not the fees, in fact, were reasonable. And the facts are that the fees were not reasonable. The fees were charged by a lawyer not even admitted in Eastern District, Washington, who didn't even do the work, whose name didn't appear on the pleadings. I said at this level we're probably not going to reach that issue. You really can't, because you first have to get to debt collector and send it back to Judge Shea to find out if the statute was violated, other than F6. But according to counsel's argument, F6 would only ever apply if it's that so-called third prong, that phantom limb of the Debt Collection Practices Act. Counsel, you have much exceeded your time, and I think we do understand your position. Can you sum up quickly? Yes. And I think the most important point is you have to read the clear language of A6 and how the statute is structured. You have a paragraph of inclusion up here. You have exclusions following that. It's the structure of the statute itself. Up here it says principal purpose is the collection of any debt or regular collects any debt. And then the statute has defined debt. But when you get to the repossession section, it doesn't say the word debt. It says also includes person who uses interstate commerce or mails. The principal purpose is enforcement of security agreements. That's not a pass. Thank you, counsel. F6 still applies to the other two parts. Thank you. The case just argued is submitted. And we thank counsel for their arguments. We will next hear argument in United States v. Mejia Garcia. Oh, that's the one we're going to do at the end. I'm sorry. We're getting someone who's stuck in Oregon ice. So we'll save that one and move to United States v. Martinez-Andrade. Good morning, Your Honors.
judges: Graber, Tallman, Clifton